# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00709-CV

**David Mendez, Appellant**

**v.**

**David Balagia and T. Riley, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN500810, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

David Mendez appeals from the district court's grant of summary judgment in favor of David Balagia and T. Riley. We affirm the judgment.

## BACKGROUND

Mendez is an inmate serving a life sentence in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) on a capital murder conviction. He was initially booked into the Travis County Jail in 1997 on capital murder charges and was tried, convicted of capital murder, and sentenced to confinement for life in TDCJ, as the State did not seek the death penalty. In March 2000, after sentencing but before transfer to TDCJ, corrections officers classified Mendez as a "high-security risk inmate" based on information that he and another inmate were planning to take a female

hostage and attempt to escape. This Court later reversed Mendez's conviction and remanded for a new trial.[1]

Mendez was bench-warranted from TDCJ back to Travis County on July 3, 2002, and was again held in the Travis County Jail pending retrial. Upon his return to the county jail, Mendez was again classified as a high-risk prisoner and was placed in administrative segregation, where he remained for the fifteen months he continued to be held there. Mendez was again convicted of capital murder, received a life sentence, and was transferred to TDCJ. His second conviction was affirmed by this Court.[2]

Mendez, acting pro se, later filed suit against Balagia and Riley, two corrections officers with the Travis County Sheriff's Office. Mendez alleged that Balagia ordered him into administrative segregation in July 2002 "knowing that the escape allegation was false," and complained that Balagia's conduct constituted intentional infliction of emotional distress. Mendez further pleaded that Riley, "a recreation officer," forced him to wear leg irons during his recreation periods that "would wear away plaintiff's flesh on his ankles" and that such conduct constituted intentional infliction of emotional distress. Liberally construing his pleadings, Mendez also alleges that Riley intentionally inflicted emotional distress on him by failing to provide him a "due process hearing" when placing him in administrative segregation and that Balagia is vicariously liable for such conduct.

---

[1] *Mendez v. State*, 56 S.W.3d 880 (Tex. App.—Austin 2001, pet. ref'd).

[2] *Mendez v. State*, No. 03-03-00571-CR, 2004 Tex. App. LEXIS 11216, at *1 (Tex. App.—Austin Dec. 16, 2004, pet. ref'd) (mem. op., not designated for publication).

Balagia and Riley filed a "no evidence" motion for summary judgment asserting, among other grounds, (1) sovereign immunity and absence of a waiver under the tort claims act, *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (West 2005); (2) Mendez "failed to state a constitutionally cognizable liberty interest"; (3) no evidence of "extreme and outrageous" conduct; and (4) no evidence of damages. In response, Mendez filed an amended petition abandoning any claims against the two corrections officers in their official capacities and purporting to proceed against them exclusively in their individual capacities. The district court granted their motion without stating the grounds. This appeal followed.

## DISCUSSION

In six issues on appeal, Mendez challenges the district court's summary judgment in favor of Balagia and Riley, attacking each of the grounds raised in their motion. Mendez also argues that the district court erred in granting summary judgment on his allegation that Balagia is vicariously liable for Riley's conduct because that ground was never explicitly raised in the summary-judgment motion.

**Standard of review**

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Because the district court's order does not specify the grounds for its summary judgment, we must affirm the order if any of the grounds presented to the district court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 692 (Tex. App.—Austin 2005, pet. denied).

3

We conclude that the motion for summary judgment must be affirmed on no-evidence grounds.

A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of summary judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id*. (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id*. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

4

**Summary-judgment grounds**

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). A defendant's conduct satisfies the second element only if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Id*.

In his response to the motion for summary judgment, Mendez attached a letter from Balagia and a document entitled "Unsworn Declaration of David Mendez." Neither item provides more than a scintilla of evidence that Balagia's and Riley's conduct was "extreme and outrageous."

In the letter, dated April 2001, Balagia wrote Mendez the following:

> In regards to the incident you were involved in while incarcerated in the Travis County jail in March of 2000, the investigation could not produce any evidence or facts to support the allegation of an attempt to escape on your part. The investigation also revealed you to be a security risk.

Mendez claims that this letter is evidence that he should not have been placed in administrative segregation. We note that, on its face, the letter reflects determinations that while Mendez had not actually attempted to escape, he was nonetheless a security risk. This letter does not raise a fact issue as to whether placing Mendez in administrative segregation was "extreme and outrageous" conduct. Similarly, Mendez's "Unsworn Declaration" provides no more than a scintilla of evidence of "extreme and outrageous conduct." In the declaration, Mendez makes various allegations, including that his leg cuffs hurt his ankles, that he had difficulty sleeping while in administrative segregation, and that his many complaints and grievances about being placed in administrative segregation and leg cuffs were ignored by prison officials. Even accepting all of these allegations as true, we hold that they do not rise to the level of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Suberu*, 216 S.W.3d at 796. We can find no authority holding that placing an inmate who has been determined to be a security risk in administrative segregation or leg cuffs is "extreme and outrageous conduct," nor does Mendez cite any such authority.

We similarly reject Mendez's claims that are predicated on a perceived right to a "due process hearing" regarding his placement in administrative segregation. "[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim." *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (labeling such a claim "frivolous").

Further, Mendez adduced no evidence of damages under his intentional-infliction claim. *See Hoffmann-La Roche*, 144 S.W.3d at 438, 445. Finally, because the foregoing grounds are dispositive of Mendez's claims against Riley, they likewise negate any claim that Balagia is vicarious liable for Riley's conduct.

These grounds are sufficient to support summary judgment in favor of Balagia and Riley.[3] We accordingly overrule Mendez's issues and affirm the district court's summary judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   July 26, 2007

---

[3] Mendez also asserts that the district court erred in granting summary judgment based on sovereign immunity because he non-suited his official-capacity claims. Because the other summary judgment grounds are sufficient to support the district court's judgment, we need not reach this argument.