# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 1, 2010

No. 09-40743
Summary Calendar

Lyle W. Cayce
Clerk

DONALD LOOSIER,

Plaintiff - Appellant

v.

UNKNOWN MEDICAL DOCTOR; UNKNOWN NURSE; UNKNOWN X-RAY
TECHNICIAN,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:09-cv-147

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Donald Lee Loosier, Texas prisoner # 911422, proceeding *pro se* and *in forma pauperis* ("IFP"), appeals the dismissal of his 42 U.S.C. § 1983 suit as frivolous and for failure to state a claim under 28 U.S.C. 1915A(b).  We AFFIRM in part and REVERSE in part and REMAND.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40743

## I. FACTS AND PROCEDURAL HISTORY

We recite the facts taking Loosier's well-pleaded factual allegations as true and viewing the facts in the light most favorable to him. Loosier was an inmate confined at the Powledge Unit of the Texas prison system, and he suffered a broken neck after falling from his bunk. While making his rounds, a correctional officer discovered Loosier injured on the floor of his cell, and he immediately notified the prison's medical staff of his discovery. Within minutes, two prison nurses arrived and transported Loosier to the prison infirmary. The infirmary staff examined Loosier and determined that he needed emergency medical care. The prison staff called 911, and an ambulance arrived to transport Loosier to the emergency room at the Palestine Regional Medical Center ("PRMC").

Loosier arrived at PRMC in extreme pain, and he was strapped down to a backboard with his head and neck secured in a brace. Loosier was met by an emergency room doctor (the "Doctor"), and he requested medication for his pain. The Doctor initially refused Loosier's request. Loosier continued to be in pain for six to eight hours before a nurse (the "Nurse") responded to his screams by providing him an intravenous drip. After providing the drip, the Nurse informed the Doctor that Loosier should not be given any additional pain medication, and the Doctor responded by stating, "I don't know why these people send you inmates here instead of [the University of Texas Medical Branch ("UTMB")], there are citizens here and y'all don't need to be here."

Loosier did not react positively to the intravenous drip. The drip caused Loosier to vomit, and, because he was strapped down to a backboard and had his head and neck secured, he was unable to turn his head to clear the vomit from his mouth. A prison guard, who was assigned to monitor Loosier, noticed that Loosier had begun to vomit and that the vomit was causing him to choke. The prison guard called to the Nurse and the Doctor for assistance but neither the Nurse nor the Doctor responded to his calls. When he saw that the medical staff

2

was not going to help Loosier, the prison guard took hold of Loosier's backboard and turned it on its side so that Loosier could clear his mouth and begin breathing again.

The Doctor ordered x-rays, a MRI, and a Cat-scan of Loosier's neck. An X-ray technician (the "X-ray Technician") examined Loosier's X-ray and informed the Doctor that he could find nothing wrong with Loosier's neck. After the scans were performed, the Doctor informed Loosier that she could find nothing wrong with his neck and that she was going to discharge him. At discharge, the Doctor told Loosier, "But if you were not an inmate I would keep you and find out what was injured in your neck." After making her comment, the Doctor stuck a needle into Loosier's shoulder. Loosier did not respond in any way to the needle. Despite the lack of a response, the Doctor allowed an ambulance to return Loosier to the prison. The Doctor did not order any treatment or medication for Loosier's injury. Instead of doing so, the Doctor concluded her time with Loosier by leaving him strapped to a backboard with his head and neck braced for transport back to the prison.

Loosier spent six days in pain after being returned to the prison. Loosier remained confined to his bed for those six days. He had to receive assistance from others to clean and feed himself.

Because Loosier continued to be in pain, prison officials sent Loosier to UTMB, where doctors X-rayed his neck and were able to immediately determine that his neck was broken. The doctors quickly stabilized Loosier's neck and performed emergency surgery to repair the break. The doctors informed Loosier that he was fortunate not to have been paralyzed by his injury and that the medical personnel at PRMC should have been able to determine that his neck was broken based on his X-ray. This suit followed.

Loosier brought this suit under § 1983 against the Doctor, the Nurse, and the X-ray Technician at PRMC, alleging that their actions violated his Eighth

No. 09-40743

Amendment right to medical care. Loosier's complaint was referred to a magistrate judge, who determined that Loosier failed to allege facts showing that the defendants were state actors, and, as a result, recommended that Loosier's claims be dismissed under § 1915A(b). Loosier objected to the magistrate judge's recommendation and findings. The district court overruled Loosier's objections and adopted the magistrate judge's opinion. The district court then dismissed Loosier's complaint as frivolous and, because it was frivolous, the court also dismissed the complaint for failure to state a claim. Loosier appeals the district court's dismissal.

## II. DISCUSSION

Loosier asserts that the district court erred in dismissing his suit under § 1915A(b). Section 1915A dismissals are designed to "filter out" the large number of frivolous prisoner claims that are filed in federal court. *Jones v. Bock*, 549 U.S. 199, 203 (2007). The filtering of such claims is designed to "ensure[] that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of [claims] with merit." *Id*. The district court found that Loosier's suit was frivolous and subject to filtering under § 1915A. A review of Loosier's complaint, however, shows that his suit is not frivolous, at least as to the Doctor and Nurse.[1] To the contrary, his complaint shows that he has alleged a highly plausible claim for relief and that the district court prematurely dismissed his claim for failing to state a fact peculiarly within the knowledge of the defendants.

---

[1] We review the district court's frivolousness determination for abuse of discretion, *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998), and we review the district court's dismissal for failure to state a claim under the same de novo standard as dismissals under Federal Rule of Civil Procedure ("Rule") 12(b)(6), *see Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).

4

A. Deliberate Indifference

To state a claim for relief, Loosier had to first allege facts showing that the defendants violated his Eighth Amendment right to medical care. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Eighth Amendment's prohibition against "cruel and unusual punishment" protects prisoners from a denial of or improper medical care only if the care is "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To state a claim for deliberate indifference, an inmate must allege facts showing that a medical professional (1) knew that the inmate faced a substantial risk of serious harm, and (2) disregarded that risk by failing to take reasonable measures to abate it. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). "This knowledge requirement is subjective: The [medical professional] 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (quoting *Farmer*, 511 U.S. at 837).[2] A review of Loosier's complaint shows that he has sufficiently alleged a claim of deliberate indifference against the Doctor and the Nurse but not the X-ray Technician.

Loosier has alleged facts showing that the Doctor and the Nurse were deliberately indifferent to his need for medical care. After receiving pain medication from the Nurse, Loosier alleged that he began choking on his own vomit, which allegedly caused the prison guard who was watching over him to call out to the Doctor and the Nurse for assistance. Loosier further alleged that the Doctor and the Nurse ignored the guard's plea for help. These allegations

---

[2] "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).

of fact are, at least at this stage, sufficient to state a deliberate indifference claim against the Doctor and the Nurse. *See Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (stating that a plaintiff may state a claim for deliberate indifference by showing that officials ignored his complaints for medical assistance); *Bradich v. City of Chicago*, 413 F.3d 688, 691 (7th Cir. 2005) (stating that ignoring a choking inmate to attend to other tasks "would exemplify deliberate indifference to serious medical needs"). Loosier also alleged facts showing that the Doctor knew that he had injured his neck, that he was in extreme pain, that he had no feeling in his shoulder below his neck, and that he had to be kept in a neck brace. Loosier further alleged that, despite knowing these facts, the Doctor chose not to provide him any treatment or medication for his injury because of his prisoner status, not some medical judgment. These facts provide an additional basis for a deliberate indifference claim against the Doctor.[3] *See Harris*, 198 F.3d at 159-60 (finding that a prisoner had sufficiently alleged a deliberate indifference claim against a doctor who examined him and "ignored his . . . requests for immediate medical treatment . . . and his complaints of excruciating pain");[4] *see also Perez v. Anderson*, 350 F. App'x 959, 961-62 (5th Cir. 2009) (unpublished) (holding that an inmate stated a deliberate

---

[3] Under our precedents, "claims that . . . medical personnel have incorrectly diagnosed [an] illness or that . . . treatment has been unsuccessful" are usually insufficient to establish an Eighth Amendment violation. *See, e.g.*, *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Moreover, the question of "whether . . . additional diagnostic techniques" should have been pursued also does not provide a basis for relief because the question "is a classic example of a matter for medical judgment" and, at most, constitutes "medical malpractice," not "cruel and unusual punishment." *Estelle*, 429 U.S. at 107. We do not read Loosier's complaint as attempting to state a claim for an incorrect diagnosis, unsuccessful medical treatment, or failure to conduct further tests. We find that Loosier has stated a claim based on the Doctor's and the Nurse's failure to respond to his choking and the Doctor's failure to provide treatment when she knew that he had suffered a severe neck injury.

[4] Although *Harris* was decided before *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), we still find its reasoning persuasive and instructive as applied to the case at hand.

No. 09-40743

indifference claim  against prison officials who knew he was in excruciating pain and failed to provide him medical treatment); *Ledesma v. Swartz*, No. 97-10799, 1997 WL 811746, at *1 (5th Cir. Dec. 16, 1997) (unpublished) (finding that a doctor had to know of a substantial risk to an inmate's health and drew an inference of such risk when he was presented with the inmate's physical condition and complaints of severe pain and severe trauma).[5]

In contrast to the Doctor and the Nurse, Loosier has not alleged facts showing that the X-ray Technician was deliberately indifferent to his need for medical care.  Loosier alleges that the X-ray Technician misread his X-ray and wrongly informed the Doctor that he could find nothing wrong with Loosier's neck.  Loosier does not allege that the technician knew and disregarded the fact that he had suffered a serious neck injury.  At most, these facts show that the technician committed medical malpractice or was negligent in his examination of Loosier's X-ray. "[M]alpractice and negligent treatment do not rise to the level of a constitutional tort." *Harris*, 198 F.3d at 159.  As a consequence, we find that Loosier has not stated a claim for relief against the X-ray Technician.

B. State Action

In addition to alleging facts showing deliberate indifference, Loosier also had to allege facts showing that the Doctor and the Nurse were acting under the color of state law in order to state a claim under § 1983. *West*, 487 U.S. at 48. The district court dismissed Loosier's complaint after finding that he failed to allege state action. Specifically, the district court found that Loosier's complaint failed to allege state action because: (1) his complaint showed that the defendants were private medical providers, and (2) his complaint failed to allege a contractual relationship between the providers' employer, PRMC, and the state.  The failure to allege a contract, however, is no fault of Loosier's because

---

[5] Although unpublished decisions are not precedential, we find these decisions to be instructive.

7

he has not yet had the benefit of discovery and is bound by Rule 11 to allege only those facts for which he has or will likely have evidentiary support. As we have said in the past, we do not require plaintiffs to plead facts peculiarly within the knowledge of defendants. *See Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995) (en banc); *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009) (unpublished) (applying *Schultea*, 47 F.3d at 1432, and remanding for limited discovery of facts peculiarly within a defendant's knowledge regarding his alleged deliberate indifference); *see also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 830, 833 (7th Cir. 2009) (stating that a prisoner-plaintiff could not fairly be charged with knowing whether a private medical provider acted pursuant to a contract and remanding for limited discovery on the issue of whether the provider was a "state actor").

The fact Loosier omitted here falls squarely within the category of matters "peculiarly within" the knowledge of others. Loosier argued for discovery below, and he argues here that he should have been given the opportunity to establish whether the requisite contractual relationship existed between PRMC and the state. We agree. Accordingly, we remand for limited discovery on the issue of whether the Doctor and the Nurse were state actors. We instruct the district court to carry out the analysis of the state actor issue anew once that discovery is complete.[6]

---

[6] Loosier also argues in his brief that an express contractual relationship is not necessary for the Nurse and the Doctor to be state actors, citing *West*, 487 U.S. at 56 and *Conner v. Donnelly*, 42 F.3d 220, 224-26 (4th Cir. 1994). We do not need to decide this issue at this stage because it is not necessary for the disposition of this appeal. On remand, if no express contract is found, the district court should carefully assess the state of the law on this matter in both this circuit and others to determine whether a colorable legal argument can be made on this point before dismissing Loosier's claim as frivolous. If more factual development is needed beyond the limited discovery here ordered, it may be more appropriate to join the defendants and allow for full briefing.

No. 09-40743

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal as to the X-ray Technician, and we REVERSE and REMAND as to the Doctor and the Nurse. Loosier has also moved for an order directing the clerk's office to return to him a copy of his brief that he submitted to the court. Loosier's motion is GRANTED.